OPINION OF THE COURT
Theodore T. Jones, J.
Plaintiff MTA Bus Company moves for an order pursuant to chapter 929 (§ 34) of the Laws of 1986 (as amended) and Civil Service Law § 210 (3) (f), imposing forfeiture of the dues deduction right of defendant Local 100 of the Transport Workers Union of America, AFL-CIO (Local 100).[1]
Plaintiff moves for an order, pursuant to chapter 929 (§ 34) of the Laws of 1986 (as amended) (hereafter section 34) and Civil Service Law § 210 (3), imposing forfeiture of the dues deduction right of Local 100. In support of this motion, plaintiff points out that Civil Service Law § 210 (3) (f) specifically requires that, where the Public Employment Relations Board (PERB) determines that an employee organization has violated Civil Service Law § 210 (1), PERB “shall order forfeiture of the [employee organization’s dues collection rights] ... for such specified period of time as the board shall determine, or, in the discretion of [PERB], for an indefinite period of time subject to restoration upon application.” Plaintiff further argues that, in enacting section 34, the Legislature specifically transferred the responsibility and jurisdiction for enforcing Civil Service Law § 210 (3) from PERB to the court.[2] In this regard, section 34 provides:
“For the purposes of [Civil Service Law § 210 (3) *945 and Judiciary Law § 751], any public employer as defined in subdivision five of section two hundred nine of the civil service law whose public employee organizations are covered by such subdivision shall be deemed to be a government exempt from certain provisions of article fourteen of the civil service law pursuant to section two hundred twelve of such law. Where an employee organization is determined by the court in the exercise of its authority under [Judiciary Law § 751] to have violated the provisions of [Civil Service Law § 210 (1)], the court shall apply the provisions set forth in [Civil Service Law § 210 (3)].”
In particular, MTA Bus notes that the first sentence of section 34 directly applies to plaintiffs and Local 100 since Civil Service Law § 209 (5) (a) expressly covers these entities. As to the second sentence of section 34, plaintiff points out that the court has already determined, in the exercise of its authority under Judiciary Law § 751 (2) (a), that Local 100 violated Civil Service Law § 210 (1). Thus, MTA Bus maintains that, pursuant to section 34, the court (as opposed to PERB) is required to “apply the provisions set forth in [Civil Service Law § 210 (3)]” and order the forfeiture of Local 100’s right to an automatic dues deduction from their members’ paychecks.
With respect to the duration of the dues forfeiture, plaintiff maintains that the court should order an indefinite forfeiture, which should only be terminated after Local 100 demonstrates a sufficient period of good-faith compliance with the mandates of the Taylor Law. In the alternative, plaintiff avers that the court should order a forfeiture for a definite period of time. Finally, plaintiff suggests that, since the court has already determined that Local 100 violated Civil Service Law § 210 (1), and evidence has already been presented (at the Dec. 20, 2005 contempt hearing) regarding the impact of the strike, the extent of the union’s defiance and the financial resources of Local 100, no new hearing is necessary prior to the imposition of the forfeiture sanction.
In opposition to plaintiffs motion, Local 100 initially points out that MTA Bus is not seeking the dues forfeiture sanction as part of a Judiciary Law § 751 (2) (a) contempt proceeding. Rather, Local 100 notes that plaintiff seeks this sanction as a *946 separate cause of action, independent of any contempt sanctions. According to Local 100, a review of section 34, as well as of Judiciary Law § 751 (2) and Civil Service Law § 210 (3), makes it clear that the Legislature did not intend to create a separate cause of action whereby an employer can seek dues forfeiture sanctions independent of a Judiciary Law § 751 (2) (a) contempt proceeding. In this regard, Local 100 points out that, prior to the enactment of section 34, MTA unions (such as itself) were subject to two separate but largely identical proceedings before two distinct entities in the wake of a Civil Service Law § 210 (1) violation. In particular, an MTA union was subject to a fine following a Judiciary Law § 751 (2) (a) contempt proceeding. At such a proceeding, in setting the amount of the fine, the court was required to consider the extent of the union’s wilful defiance, the impact of the strike on the welfare of the community, and the ability of the union to pay the fine. Subsequently, the union was subject to a proceeding before PERB wherein it faced the sanction of forfeiting its right to have membership dues automatically deducted from employees’ paychecks for a period of time which PERB determined by weighing substantially the same criteria previously considered by the court in the Judiciary Law § 751 (2) (a) proceeding. Thus, Local 100 contends that section 34 was enacted in order to consolidate these two separate proceedings into a single proceeding before the court. In other words, Local 100 argues that section 34 mandates that the issues of the imposition of a fine and dues forfeiture sanction be resolved by the court within the context of a Judiciary Law § 751 (2) (a) contempt proceeding. Here, because MTA Bus admittedly is not seeking the imposition of the dues forfeiture as a sanction for contempt under Judiciary Law § 751 (2) (a), Local 100 avers that there is no basis for the court to impose this sanction against it.[3]
In further opposition to plaintiff’s motion for the imposition of a dues forfeiture sanction, Local 100 argues that even if MTA Bus is entitled to this relief, the court must conduct a hearing prior to determining the duration of this forfeiture penalty. In this regard, Local 100 notes that Civil Service Law § 210 (3) (d) specifically requires that a hearing be conducted before the *947 court determines the duration of the forfeiture. In addition, Local 100 avers that the previous contempt hearings are insufficient to satisfy the hearing requirement set forth in Civil Service Law § 210 (3) (d) since Local 100’s financial resources (which the court must consider in setting the duration of the forfeiture) have changed since the December 2005 contempt hearings. Furthermore, Local 100 maintains that there are mitigating factors, including provocation on the part of plaintiff, which the court should consider prior to determining the duration of the forfeiture.
There is no merit to Local 100’s argument that an application for a dues forfeiture sanction must be brought as part of a Judiciary Law § 751 (2) (a) contempt proceeding. Prior to the enactment of section 34, contempt proceedings under Judiciary Law § 751 (2) (a) and dues forfeiture proceedings under Civil Service Law § 210 (3) brought against any MTA union were separate and distinct undertakings made before two different bodies (i.e., the court and PERB) (Board of Educ. Union Free School Dist. No. 4, Town of Rye v Public Empl. Relations Bd. of State of N.Y., 74 Misc 2d 741, 742 [1973]). While section 34 does transfer jurisdiction for imposing the dues forfeiture sanction under Civil Service Law § 210 (3) from PERB to the court, nothing in the language of the statute specifically mandates that this distinct sanction be sought during, or as part of, Judiciary Law § 751 (2) (a) contempt proceedings. Indeed, in comparing the respective rationales for contempt under Judiciary Law § 751 (2) (a) and Civil Service Law § 210 (3) forfeiture proceedings, it is clear that they remain distinct undertakings. In this regard, it is well settled that a contempt proceeding under Judiciary Law § 751 (2) (a) is held in order to determine the appropriate punishment for an employee organization’s violation of a court’s injunction. Thus, the purpose of any sanctions imposed under Judiciary Law § 751 (2) (a) is to uphold the authority of the court (see generally Matter of Rubin [Plainview-Old Bethpage Congress of Teachers, NYEA/NEA], 100 AD2d 850, 851 [1984]). In contrast, the forfeiture sanction set forth in Civil Service Law § 210 (3) is intended as punishment for an employee organization’s statutory violation of Civil Service Law § 210 (1). Furthermore, while the imposition of the dues forfeiture sanction by the court under Judiciary Law § 751 (2) (a) in “government exempt” cases is a discretionary matter, the sanction is mandatory under Civil Service Law § 210 (3) (f). Thus, it stands to reason that Civil Service Law § 210 (3) (f) proceedings against the MTA unions *948 remain distinct and separate from contempt proceedings under Judiciary Law § 751 (2) (a).
In any event, assuming, arguendo, that Local 100 is correct in asserting that section 34, in effect, made the heretofore separate Civil Service Law § 210 (3) forfeiture proceedings part of Judiciary Law § 751 (2) (a) contempt proceedings in cases involving MTA unions, nothing in section 34 would preclude the court from deeming that MTA Bus’s motion for the forfeiture sanctions had been made pursuant to Judiciary Law § 751 (2) (a). Local 100 has not demonstrated that it would be prejudiced if this court were to hold a second contempt proceeding on the issue of dues forfeiture after initial contempt hearings on the issue of a fine have already been held. In fact, Local 100 would arguably benefit from a two-part contempt proceeding as it could better demonstrate what effect the previously imposed fine would have on its financial condition, and could therefore argue for a shorter dues forfeiture period. Indeed, since the court will, as Local 100 urges, take into consideration the per diem fine imposed by the court in the previous December 2005 contempt hearing, it would appear illogical to proceed, as Local 100 suggests, on the issues of the fine and dues forfeiture sanction simultaneously.
Finally, the sanction sought by plaintiff, which merely involves the temporary forfeiture of Local 100’s right to have the employers automatically deduct union dues from employees’ paychecks, does not implicate any double jeopardy concerns. Historically (i.e., prior to the enactment of section 34), these sanctions were always imposed independently from one another. Furthermore, Local 100 is free to continue collecting dues from its membership using whatever methods it deems appropriate.
Accordingly, plaintiff is entitled to seek the forfeiture sanction against Local 100 notwithstanding the fact that it did not seek such forfeiture in the contempt proceedings before the court in December 2005. However, the court agrees with Local 100 that, prior to setting the duration of any dues forfeiture, hearings must be conducted wherein the court must consider the extent of Local 100’s wilful defiance of Civil Service Law § 210 (1), the impact of the strike on the public health, safety, and welfare of the community, as well as the financial resources of Local 100. In fact, Civil Service Law § 210 (3) (d) specifically requires such a hearing. Moreover, while it is true that the court conducted similar hearings in connection with the December 2005 contempt proceedings, this does not obviate the need for a new hearing on the matter since the financial condition of Local 100 *949 may have changed in the ensuing months and new evidence should be certainly available regarding the actual impact of the strike upon the community welfare. However, since the factors which the court must weigh in the contempt and dues check-off proceedings are nearly identical, the court will consider the evidence and record accumulated in the December 20, 2005 contempt proceeding in reaching a determination regarding the appropriate duration of the forfeiture of Local 100’s dues checkoff rights.
On April 7, 10, 11, 12, and 17, 2006, the court conducted hearings in order to determine whether the imposition of a forfeiture sanction against Local 100 was warranted, and if so, what the appropriate duration of such a sanction should be. For the reasons stated above, the court has determined that, pursuant to Civil Service Law § 210 (3) and section 34, such a sanction is not only warranted, but in fact, required by law.
Turning to the issue of the appropriate duration of the forfeiture sanction, the court initially notes that, under Civil Service Law § 210 (3) (f), in making a determination in this regard, the court must consider the extent of Local 100’s wilful defiance of Civil Service Law § 210 (1), the impact of the strike on the public health, safety, and welfare of the community, and the financial resources of the employee organization. In addition, the court may consider any other factors that it considers relevant including whether the public employer (i.e., the plaintiff) engaged in “acts of extreme provocation as to detract from the responsibility of [Local 100] for the strike.” (Civil Service Law § 210 [3] [f].)
Accordingly, at the April 2006 hearings, as well as the December 20, 2005 contempt hearing, evidence in the form of sworn witness testimony, affidavits, reports, and letters were presented to the court regarding the above-stated required factors and the court has given due consideration to such evidence. Moreover, the court has considered Local 100’s conduct with respect to prior contract negotiations including an 11-day transit strike in 1980 as well as conduct which necessitated the issuance of preliminary injunctions in 1999 and 2002 (see Matter of Webutuck Teachers Assn., 13 PERB 11 3041 [1980] [wherein PERB noted that it generally imposed a more severe penalty for a second violation of the Taylor Law]; accord Matter of Lake-land Fedn. of Teachers, Local 1760, Am. Fedn. of Teachers, AFL-CIO, 11 PERB 11 3020 [1978]). In addition, evidence regarding Local 100’s efforts to mitigate the effect of the strike, by *950 safeguarding transit facilities and equipment and by ensuring that all bus and train operators finished their appointed runs prior to walking off the job was presented to the court, and the court has considered this factor in determining the appropriate duration of the forfeiture sanction.
Finally, during the course of the hearings, Local 100 called numerous witnesses and presented various documentary evidence in an effort to establish that the plaintiff engaged in acts of “extreme provocation” during the course of the contract negotiations leading up to the strike.[4] Although not required to do so, the court was prepared to consider this factor in determining the duration of the dues forfeiture sanction. However, none of the plaintiffs actions which came to light during the course of the hearings qualify as such extreme provocation, “especially in view of the obvious danger to the health and safety of the citizenry” (City of New York v Vizzini, 49 AD2d 833, 834 [1975]). Indeed, much of what occurred merely amounted to the type of routine posturing and strategic ploys that are typical in employment contract negotiations, particularly between parties (such as plaintiff and Local 100) which have an acrimonious history. Furthermore, even Local 100’s more legitimate complaints, such as plaintiffs insistence that Local 100 place the issue of pensions on the bargaining table, do not qualify as extreme provocation. In this regard, Local 100 could and should have resolved this matter by appealing to PERB rather than engaging in an unlawful and crippling transit strike during the holiday season.
Accordingly, having conducted the hearing, and after considering all the mandatory factors set forth in Civil Service Law § 210 (3) (f), as well as all other relevant and mitigating factors, the court hereby imposes upon Local 100 an indefinite term of forfeiture commencing 30 days after entry of this order, unless Local 100 makes an application within said 30-day period with respect to the commencement date of the forfeiture sanction. Local 100 may seek reinstatement of its dues check-off right no earlier than three months after implementation of the forfeiture sanction. At that time, Local 100 may appear before this court, and upon a showing of good-faith compliance with the mandates of the Taylor Law, and submission of an affirmation that it no longer asserts the right to strike against any government as required pursuant to Civil Service Law § 210 (3) (g) and § 207 (3), apply for reinstatement of its right to have the *951 employers automatically deduct membership dues from the paychecks of union members.
Summary
In summary, plaintiffs motion/application which seeks an order imposing forfeiture of the dues deduction right of Local 100 is granted to the extent that 30 days after entry of this order, Local 100 is to forfeit this right for an indefinite period of time, with leave to apply for reinstatement of this right no earlier than three months after such forfeiture first occurs.

. In a separate action filed under Kings County Index No. 37469/05, plaintiffs New York City Transit Authority (TA) and Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) have moved for (among .other things) an identical order imposing the dues forfeiture sanction against Local 100. Accordingly, the two actions were consolidated for purposes of holding hearings on the issue of dues forfeiture. Furthermore, the instant decision and order has been incorporated into the court’s April 19, 2006 decision and order issued in the TA and MABSTOA’s action under Kings County Index No. 37469/05.

. Plaintiff initially brought a Civil Service Law § 210 (3) dues forfeiture proceeding against Local 100 before PERB. At this proceeding, the issue of PERB’s jurisdiction over the matter was raised given the enactment of section *945 34. Thereafter, plaintiff moved before this court for an order imposing this sanction and PERB placed the proceeding on its “hold calendar.”

. Local 100 argues that, inasmuch as a judgment has already been entered for the Judiciary Law § 751 (2) (a) contempt hearing, plaintiff has, in effect, waived any right it had to seek the dues forfeiture sanction. In particular, Local 100 contends that any attempt to reopen the contempt proceeding in order to impose the additional dues forfeiture sanction would raise double jeopardy concerns.

. The court notes that the provocation evidence presented differed with respect to MTA Bus and the TA and MABSTOA.